**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERA FRANCHISE SYSTEMS, INC., | Case No.  1:06-cv-1861 LJO NEW (TAG) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY COURT (Doc. 32) |
| v. | |
| BRAGER & ASSOCIATES, INC., a California corporation doing business as ERA STARGATE REALTY, et al., | |
| Defendants. | |

_____/

**INTRODUCTION AND BACKGROUND[1]**

Plaintiff ERA Franchise Systems, Inc. ("Plaintiff" or "ERA") is a real estate brokerage business franchisor.  (Docs. 1, 32, 33).   Plaintiff is a Delaware corporation and its principal place of business is in New Jersey.  Defendant Brager & Associates, Inc. ("Brager, Inc.") is a real estate brokerage business franchisee doing business as ERA Stargate Realty.  (Id.).   Brager, Inc. is a California corporation and its principal place of business is in California. (Id.).  Defendant Alisha Brager is a citizen of the State of California. (Id.).  This is a diversity jurisdiction action.

In 2001, Brager, Inc. contracted with Plaintiff to own and operate five real estate brokerage franchises in Ceres, Turlock, Modesto, Oakdale, and Merced, California, all within the Eastern District of California. (Docs. 1, 32, 33).  The parties' contractual relationship is memorialized by five franchise and security agreements, and one promissory note. (Doc. 33, Exhs. A-K).[2]  Defendant

_____

[1]The background recitation is derived from Plaintiff's application for default judgment and supporting documents and this Court's file.

[2]Each franchise agreement is entitled "ERA Franchise Systems, Inc. Membership Agreement" and they are collectively referred to as the "franchise agreements."

1

1
2
3

Brager, Inc.'s obligations under the franchise agreements are personally guaranteed by Defendant Alisha Brager, who is also the president of Brager, Inc. and a co-maker on the promissory note. (Doc. 33, Exhs. F-K). [3]

4
5
6
7
8
9
10
11

On December 22, 2006, Plaintiff filed a complaint against Defendants Brager, Inc. and Alisha Brager (collectively, the "Defendants"), seeking damages for breach of contract related to the franchise agreements, guaranties, and promissory note, and for various other claims. (Doc. 1). Plaintiff contends that Defendants breached the franchise agreements and guaranties, and defaulted on the promissory note. (Doc. 1, 7-9:1-15). In its complaint, Plaintiff also asks the Court to compel Defendants to provide an accounting or submit to a records audit as required by the franchise agreements, and to award Plaintiff possession of personal property secured by the security agreements. (Doc. 1, 11:17-28, 12:1-16).

12
13
14
15
16
17

Plaintiff served Defendant Brager, Inc. with a copy of the complaint on January 11, 2007. (Doc. 15, 2:1-3).  Plaintiff served Defendant Alisha Brager with a copy of the complaint on February 1, 2007. (Doc. 18, 1:24-28).  Plaintiff filed requests for entry of default against both Defendants, with supporting papers on February 27, 2007.  (Docs. 14, 15, 18, 19).  In response to Plaintiff's application for entry of default, the Clerk of the Court entered defaults as to both Defendants on February 27, 2007.  (Docs. 22, 23).

18
19
20
21
22

On May 22, 2007, Plaintiff filed an application for default judgment by the Court against both Defendants (the "Application"), with supporting documents.  (Docs. 32, 33).  The Application was served on both Defendants on May 18, 2007.  (Doc. 35).  On June 25, 2007, the Court conducted a hearing on the Application.  Attorney Lisa K. Garber appeared on behalf of Plaintiff.  No appearances were made by or on behalf of Defendants.

23
24
25

In its Application, Plaintiff seeks a default judgment against Defendants in the amount of $2,206.086.40 to recover royalty fees, National Advertising Fund contributions ("advertising fees"), liquidated damages, and loan principal.  Plaintiff also seeks prejudgment interest in the amount of

26
27
28

[3]There are five corresponding guaranty agreements, each is entitled "Guaranty and Membership Agreement Endorsement," and they are referred to collectively as the "guaranties."  The promissory note is entitled "Development Advance Promissory Note" and is referred to as the "promissory note."

$202.67 per day from August 15, 2005 until paid, based on the balance due under the franchise agreements.  Plaintiff also seeks prejudgment interest in the amount of $52.50 per day until paid, based on the principal balance of the promissory note.  Finally, Plaintiff also seeks an award of attorney's fees and costs of $17,034.43 .  (Doc. 32).  The Application does not request an order compelling Defendants to provide an accounting or submit to an audit of its records, or to turn over personal property alleged to be the subject of the security agreements.  (Id.).

## DISCUSSION

### A.    Default Judgment Standards.

A court has the discretion to enter a default judgment against one who is not an infant, incompetent, or member of the armed services where the claim is for an amount that is not certain on the face of the claim and where (a) the defendants have been served with the claim; (b) the defendants' defaults have been entered for failure to appear; (c) if the defendants have appeared in the action, the defendants have been served with written notice of the application for judgment at least three days before the hearing on the application; and (d) the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect. Fed.R.Civ.P. 55(b); Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988).  Factors that may be considered by courts in exercising discretion as to the entry of a default judgment include the nature and extent of the delay, Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); the possibility of prejudice to the plaintiff, Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.1986); the merits of the plaintiff's substantive claim, id.; the sufficiency of the allegations in the complaint to support judgment, Alan Neuman Productions, Inc., 862 F.2d at 1392; the amount in controversy, Eitel, 782 F.2d at 1471-72; the possibility of a dispute concerning material facts, id.; whether the default was due to excusable neglect, id.; and the policy underlying the Federal Rules of Civil Procedure that favors decisions on the merits, id..

A default judgment generally bars the defaulting party from disputing the facts alleged in the complaint, but the defaulting party may argue that the facts as alleged do not state a claim.  Alan Neuman Productions, Inc., 862 F.2d at 1392.  Thus, well pleaded factual allegations, except as to damages, are taken as true; however, necessary facts not contained in the pleadings, and claims

3

which are legally insufficient, are not established by default.  Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992).

**B.   Plaintiff is Entitled to Entry of Default Judgment.**

Plaintiff seeks entry of judgment by default against Brager, Inc. and Alisha Brager.  Plaintiff served Defendants with its Application. (Docs 15, 18). Defendants have failed to respond to the complaint or to otherwise appear in the proceedings, and the Clerk of Court has entered default as to each of them.  Defendants' failure to contest this action demonstrates an absence of a dispute as to material facts.  There is no evidence that the default resulted from excusable neglect because the service of the complaint and the default papers appear in order.  In light of Defendants' failure to appear and the risk of prejudice to Plaintiff resulting from the alleged breaches by Defendants, the sufficiency of the complaint, and the apparent merit of Plaintiff's substantive claims as discussed in more detail below, the Court concludes that  Plaintiff is entitled to a judgment by default against Defendants Brager, Inc. and Alisha Brager and will recommend that judgment to Plaintiff be awarded accordingly.

**C.   The Complaint is Sufficient to Support Plaintiff's Claims.**

**1.   Franchise Agreements.**

On August 29 and 30, 2001, Defendant Alisha Brager, on behalf of Defendant Brager, Inc., doing business as ERA Stargate Realty, executed five franchise agreements with Plaintiff, which entitled Defendant Brager, Inc. to own and operate ERA real estate brokerage franchise businesses for a period of ten years in five locations. (Doc. 33, Exhs. A-E).  The financial obligations imposed on Defendants include (a) an initial $20,000 membership fee for the first agreement and membership fees of $7,500 for each subsequent agreement; (2) royalty fees of 6% of all gross revenues, with minimum monthly fees of $540; and (3) a minimum advertising fee of $207.  Under each franchise agreement,  fees, including those set forth above, are subject to annual increases.  If  Defendants fail to pay the fees timely, they are charged interest at the rate of 18% per annum plus costs of collection. In addition to these financial obligations, the franchise agreements prohibit Defendants from assigning, selling, or transferring any franchise rights without Plaintiff's prior approval.  Defendants are also required to comply with other, non-monetary obligations  detailed in the franchise

4

1    agreements, including the obligation to maintain and transmit accurate record keeping, financial

2    statements, and audit information, and to maintain a current inventory of all real estate listings and

3    other records.

4                          **2.     Promissory Note.**

5         As start-up funds for the franchises, Defendant Alisha Brager, individually and as president

6    of Brager, Inc.,  borrowed  $160,000 from Plaintiff and executed a promissory note dated August 3,

7    2001.  (Doc. 33, Exh. K, p.1).  The promissory note provides that, if Defendants fail to make  any

8    payment when due, the entire outstanding principal balance will bear simple interest at rate equal  to

9    the lesser of the highest rate allowed by law or 18% per annum.  (Id.).

10                         **3.     Personal Guaranties.**

11        Defendant Alisha Brager also executed five personal guaranties, entitled "Guaranty and

12   Membership Agreement Endorsement."  (Doc. 33, Exhs. F-J).  In each guaranty agreement,

13   Defendant Alisha Brager "personally guarantees to ERA, its successors and assigns, the full

14   performance and observance of all of the covenants, conditions and agreements provided to be

15   performed and observed by Member under such Membership Agreement.[4]"

16                         **4.     Security Agreements.**

17        The complaint also alleges that as security for Defendants' performance, Defendants entered

18   into security agreements for each franchise location pledging as collateral "all of the furniture,

19   furnishings, equipment, real estate listings and listing agreements and related rights, including the

20   proceeds and products therefrom, relating to their real estate brokerage business."  (Doc. 1, 4:12-17,

21   11:1-10). However, neither the complaint nor the Application set forth or incorporate any other terms

22   or provisions of the security agreements and the Application does not seek an order for possession

23   of the collateral.

24   ///

25   ///

26

27        [4] The term "Member" is defined as Brager & Associates, Inc. (Doc. 33, Exh. F-J).  The term "Membership
     Agreement" is defined as the corresponding franchise agreement entitled "ERA Franchise Systems, Inc. Membership

28   Agreement" (Doc. 33, Exhs. A-E).

                                              5

1    **5.    Choice of Law Provisions.**

2        The franchise agreements, guaranties, and promissory note contain or incorporate a choice of

3    law provision that provides for New Jersey law to be applied to the construction and enforcement of

4    the agreements and promissory note.[5]  In determining the controlling substantive law, a federal court

5    sitting in diversity must look to the forum state's choice of law rules.  Patton v. Cox, 276 F.3d 493,

6    495 (9th Cir. 2002) (citing Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 496 (1941)).

7    Under California law, a choice of law provision will be enforced when: (1) the chosen state has a

8    substantial relationship to the parties or their transaction, or there is any other reasonable basis for

9    the parties' choice of law; and (2)  the chosen state's law is not contrary to a fundamental policy of

10   California.  Nedlloyd Lines B.V. v. Superior Court of San Mateo, 3 Cal. 4th 459, 464-66 (1992);

11   Windsor Mills, Inc., v. Collins & Aikman Corp., 25 Cal.App. 3d 987, 995-96 n. 6 (1972) (parties

12   may expressly agree what law shall govern their contract).

13       Applying the California law approach, the Court concludes that the state of New Jersey bears

14   a substantial relationship to the parties' transaction because Plaintiff's principal place of business is

15   located in New Jersey.  Moreover, enforcing the parties' choice of law provision is not contrary to

16   any fundamental policy of the state of California because, although the choice of law provision in the

17   franchise agreements excludes the application of the New Jersey Franchise Practices Act to Members

18   with offices outside of the state of New Jersey, the essential elements of Plaintiff's claims are

19   substantially similar under both New Jersey and California law.  Accordingly, the Court concludes

20   that Plaintiff's contractual claims are governed by New Jersey law.

21       **6.    Plaintiff's Complaint.**

22       Plaintiff's complaint contains eight claims. (Doc. 1).  The complaint alleges that Defendants

23   breached the franchise agreements and promissory note (Claims I and II) by, inter alia, (a) selling the

---

[5] Paragraph 24H of the franchise agreements provides:  "This Membership Agreement will be governed by the laws of the state of New Jersey, except that the New Jersey Franchise Practices Act shall not apply to Members with Offices located outside New Jersey."  (Doc.33, Exhs. A-E, ¶ 24H).  The promissory note provides that "This Note shall be construed and enforced in accordance with the laws of the State of New Jersey."  (Doc. 33, Exh.K, p.3).  The guaranties incorporate by reference the New Jersey choice of law provision contained in paragraph 24H of the franchise agreements. (Doc. 33, Exhs.F-K).

1  business without prior consent; (b) failing to pay monies  they owed under the franchise agreements

2  and the promissory note; (c) using Plaintiff's trademark in violation of the franchise agreements;

3  (d) failing to maintain a current brokers' license; and (e) failing to pay future lost profits.  Plaintiff

4  contends that as a result of Defendants' breach, it terminated the franchise agreements as of August

5  15, 2005, and suffered damages of at least $2,206,086.40.

6        Claim III of the Complaint alleges that Defendant Alisha Brager breached the five personal

7  guaranties she signed in connection with each franchise agreement.  Claim IV of the Complaint

8  alleges a written account stated which has not been paid.  In Claim V of the Complaint , Plaintiff

9  seeks a return of the monies lent, plus 18% interest.  In Claim VI, Plaintiff asserts that it is entitled to

10  quantum meruit for services provided to Defendants.  Claim VII seeks possession of personal

11  property pledged as collateral by Defendants.  Claim VIII of the Complaint seeks an accounting of all

12  funds due, including the 6% royalty fees and the 2% advertising fees required to be paid under the

13  franchise agreements.  To the extent that Plaintiff's's last five counts are outside of the parties'

14  written agreements, i.e., are common counts and/or based in equity, the Court will consider their

15  legal sufficiency under both New Jersey and California law.

16        **(a)**    **Claims I, II, and III - Breach of Contract.**

17        Claim I alleges breach of the franchise agreements.  Claim II alleges breach of the promissory

18  note.  Claim III alleges breach of the guaranties.  Under New Jersey law, the essential elements of a

19  claim for breach of contract are: (1) a contract; (2) a breach of that contract; (3) damages flowing

20  therefrom; and (4) that plaintiff performed its own contractual duties."  Hutchinson v. Delaware

21  Sav. Bank FSB, 410 F.Supp.2d 374, 385 n. 21 (D.N.J. 2006).  Claims I, II, and III allege, inter alia,

22  that Plaintiff and Defendants entered into five franchise agreements and corresponding guaranties,

23  and the  promissory note, and that Defendants breached the agreements and the promissory note by

24  selling the real estate brokerage business without prior consent; failing to pay monies owed under the

25  franchise agreements and the promissory note; using Plaintiff's trademark in violation of the

26  franchise agreements; failing to maintain a current brokers' license; and failing to pay future lost

27  profits.  Plaintiff alleges that it performed its contractual obligations by granting Defendants a non-

28  exclusive license to use Plaintiff's trademarks and marketing system, and loaning Defendants

1   $160,000.00 in start-up funds. (Doc. 1, 7-9:15). Plaintiff further alleges that as a result of

2   Defendants' breach, Plaintiff suffered damages of at least $2,206,086.40. (Id. at 9:10-13).

3   Plaintiff's breach of contract claims allege all elements necessary to state a claim for breach of

4   contract.

5           **(b)**        **Claim IV- Account Stated.**

6         In New Jersey, an account stated exists when a debtor and a creditor agree on how much the

7   debtor owes the creditor. See, Harris v. Merlino, 137 N.J.L. 717, 720-21 (N.J. Err. & App. 1948).

8   An account stated is created when an account is deemed to be mutually accepted by the parties to the

9   transaction. "To constitute an account stated, there must be a promise, express or implied, to pay a

10  single sum, whether such sum consists of a bill of a single item in a unilateral account, or is a totality

11  of all the items admitted to be correct in such account, or is the balance remaining after the mutual

12  application in payment of each other of such items in counter accounts as are mutually admitted to be

13  correct." Hirsh v. Malone, 99 N.J.L. 473, 474 (N.J. Err. & App. 1924). For an account stated to be

14  established under California law, "it must appear that at the time of the statement an indebtedness

15  from one party to the other existed, that a balance was then struck and agreed to be the correct sum

16  owing from the debtor to the creditor, and that the debtor expressly or impliedly promised to pay to

17  the creditor the amount thus determined to be owing." Maggio, Inc. V. Neal, 196 Cal.App.3d 745,

18  752-53 (1987) (citation omitted).

19        Plaintiff's Claim IV incorporates the complaint's prior allegations reciting the existence of

20  the franchise agreements, guaranties, and promissory note, and alleges that within the last four years,

21  an account was stated in writing between the parties whereby Defendants owe Plaintiff the amounts

22  set forth in the complaint, and that Defendants have failed to pay amounts due of at least

23  $2,206,086.40. (Doc. 1, 9:18-28). Plaintiff's allegations are sufficient to constitute an account

24  stated.

25          **(c)**        **Claim V - Money Lent.**

26        A claim for money lent is a common count claim. A common count claim is a statement that

27  the defendant is indebted to the plaintiff for a common variety of reasons. See, Arthur Linton

28  Corbin, Corbin on Contracts ¶ 20 (1963). An action for money lent is a common count claim to

recover money based on an allegation that there was a payment of money from the plaintiff to the defendant as a loan. In New Jersey, the essential elements for a common count for money lent are: (1) money was delivered to the defendant; (2) the money was intended as a loan; and (3) the loan was not repaid.  See, generally, Leary v. Gledhill, 8 N.J. 260, 265, 84 A. 2d 725 (1951); Clark v. Van Cleef, 75 N.J. Eq. 152, 156, 71 A. 260 (1908).  In California, the only essential elements of a common count are "(1) the statement of indebtedness in a certain sum; (2) the consideration; and (3) non-payment.  Farmers Ins. Exchange v. Zemin, 53 Cal.App.4th 445, 460 (1997).  A claim for money lent is stated if alleges an unpaid loan.  See, e.g., Jones v. Re-Mine Oil Co., 47 Cal.App.2d 832 (1941).

Claim V incorporates the complaint's prior allegations reciting the existence of the parties' various agreements and the amounts owed thereunder, and alleges that within the last four years, Defendants became indebted to Plaintiff in accordance with those agreements, and that demand for payment was made and refused.  (Doc. 1, 10: 1-10).  Plaintiff's allegations are sufficient to allege an action for money lent.

### (d)    Claim VI - Quantum Meruit.

A cause of action in quantum meruit implies a contract in the absence of an express one. Under New Jersey law, "in order to state a claim in quantum meruit, the plaintiff must allege the performance of services in good faith; the acceptance for those services by the entity to which they were rendered; and expectation of compensation therefor; and the reasonable value of the services." Iwanowa v. Ford Motor Co., 67 F.Supp. 2d 424, 472 n. 60 (D.N.J. 1999), citing Kopin v. Orange Prods., Inc., 297 N.J. Super. 353, 367-68, 688 A.2d 130 (1997). In California, in order to recover under quantum meruit, a party is not required to prove the existence of a contact, but must establish that 'the services were rendered under some understanding or expectation of both parties that compensation therefore was to be made.'" Huskinson & Brown, LLP v. Wolf, 32 Cal. 4th 453, 458 (2004) (citations omitted).

Claim VI of the complaint incorporates the complaint's prior allegations reciting the existence of the parties' agreements, and alleges that within the last four years, Plaintiff provided services to Defendants in the form of non-exclusive licenses to use Plaintiff's trademarks, marketing

1    system, and other proprietary information, that Defendants knew of and accepted, used and enjoyed

2    those services, and that the reasonable value of the services is at least $140, 976.30.  (Doc. 1, 10: 13-

3    26).  Plaintiff's contentions are sufficient to allege an alternative claim for quantum meruit.[6]

4                   **(e)     Claim VII  - Possession of Personal Property Collateral.**

5           In Claim VII of the complaint, Plaintiff seeks possession of personal property pledged by

6    Defendants as security for performance.  Claim VII alleges that Defendants executed written security

7    agreements pledging as collateral "all of the furniture, furnishings, equipment, real estate listings and

8    listing agreements and related rights, including the proceeds and products therefrom, relating to their

9    real estate brokerage business." (Doc. 1, 11:6-10).  Claim VII further alleges that as a result of

10   Defendants' breach, Plaintiff suffered damages, and is entitled to immediate possession of the

11   personal property encompassed within the security agreements.  (Doc, 1, 10:11-16).  However,

12   neither the complaint nor the Application or its supporting documents include the security

13   agreements or provide a more precise description of its terms, including whether they contain a

14   choice of law provision selecting New Jersey law.  Consequently, the Court will consider the

15   enforceabilty of the security agreements under both California and New Jersey law.

16          A security agreement is an agreement which creates or provides for a security interest.

17   California law provides that an enforceable security interest is created when (1) the debtor has signed

18   a security agreement containing a description of the collateral. . . (2) value has been given, and

19    (3) the debtor has rights in the collateral beyond mere possession.  Cal. Com. Code § 9203;  see, In

20   re Coupon Clearing, Inc. v. Clare's Food Market, Inc., 113 F.3d 1091, 1102-03 (9th Cir. 1997).  The

21   basic requirements for the creation of a valid security  interest in New Jersey are: "(1) a security

22   agreement must be entered into; (2) the agreement must be in writing or the creditor must be in

23   possession of the collateral; (3) the debtor must have rights in the collateral; and (4) the secured

24   party must have given value."  New Jersey Bank (Nat.Ass'n) v. Community Association/Farms, Inc.,

25   666 F.2d 813, 818 (C.A. N.J. 1981), citing In re Maple Contractors, Inc., 172 N.J. Super. 348, 353,

26

27          [6] When there is a valid, express contract between the parties which has not been rescinded, a plaintiff is
     precluded from recovering on a quantum meruit claim based on the same subject matter. Kas Oriental Rugs, Inc. V.
28   Ellman, 2007 WL 654727 *4, 926 A. 2d 387 (N.J. Super. A.D. 2007).

411 A.2d 1186 (Super.Ct. Law Div. 1979); N.J.S.A. 12A:9-203.

Here, the complaint alleges that the parties executed written security agreements, generally identifies the personal property collateral, and reflects that Plaintiff gave value for the security interest.   However, neither the complaint nor the Application and its supporting documents indicate what, if any, rights that Defendants have in the collateral, other than the averment that the collateral "relat[es] to their real estate brokerage business."   Plaintiff have failed to plead or provide sufficient information to allow the Court to conclude that the Defendants have more than a possessory interest in the collateral.   Accordingly, based on the pleadings and the evidence submitted, the Court is unable to ascertain whether Plaintiff's security interest is a valid one.

### (f)      Claim VIII  - Accounting.

In Claim VIII, Plaintiff seeks an accounting from the Defendants.   Count VIII incorporates the complaint's prior allegations reciting the existence of the parties' agreements, including Defendants' obligations to pay royalty and advertising fees based on Defendants' gross revenues. (Doc. 1, 11:26-28, 12:1-3).   Claim VIII further alleges that Defendants owe additional royalty and advertising fees based on, among other things, sales of real estate not reported by Defendants to Plaintiff, and that an accounting of those additional sales transactions is required in order to ascertain the additional amounts owed. (Doc. 1, 12:4-12).   A cause of action for an accounting is an equitable one and is recognized by the laws of New Jersey. See, Pollen v. Conner, 2007 WL 1876489 *12 n. 9 (D.N.J. June 28, 2007).   A complaint states an equitable claim for an accounting under California law when it alleges (1) a relationship or circumstances that require an accounting; (2) a balance is due which cannot be ascertained without an accounting; and (3) the means of an accounting are within the defendant's knowledge.   Van de Kamp v. Bank of America, 204 Cal. App.3d 819, 864 (1988); Kritzer v. Lancaster, 96 Cal.App.2d 1,7 (1950).   Plaintiff's allegations are sufficient to allege an accounting claim.

### (g)      Conclusion.

Based on the foregoing, the Court concludes that the claims alleged in the complaint are sufficiently pled and support a judgment against Defendants, except for the claims in Claims VI and

VII.  The quantum meruit claim in Claim VI is precluded by Plaintiff's recovery on the parties' express contracts.  The Claim VII claim for possession of personal property collateral is defective because it fails to allege sufficient facts to establish a valid security interest. By failing to respond to Plaintiff's complaint, Defendants have conceded that Plaintiff's allegations are true and thus have admitted that they are bound by and breached  the franchise agreements,  promissory note, and the personal guaranties.  Accordingly, the Court finds that Plaintiff's substantive claims contained in Claims  I-V and VIII are well pleaded and meritorious.  The Court  next addresses the issue of damages.

     **C.**    **Plaintiff's Damages.**

          **1.**    **Iuliano Declaration.**

     In support of its Application, Plaintiff submitted a declaration from Debbie Iuliano dated May 16, 2007, with 11 attached exhibits (the "declaration").  (Doc. 33).  Declarant Iuliano is the Vice President of Real Estate Financial Services for Realogy Corporation, Plaintiff's parent corporation. (Doc. 33, 2:1-4).  The declaration and its exhibits evidence that Plaintiff and Defendant Brager, Inc. entered into the franchise agreements, that Defendant Alisha Brager executed corresponding personal guaranties, and that both Defendants executed the promissory note in the original principal amount of $160,000.00, all as discussed above.  (Doc. 33, 3:9-28, 4:1-23). The declaration also evidences that Defendants Brager, Inc. breached the written agreements by (a) failing to pay timely royalty and marketing fees, (b) failing to designate a substitute broker when the existing responsible broker's license was suspended, (c) failing to  communicate with Plaintiff as required under the franchise agreements, and (d) listing non-residential properties with ERA marks.  (Doc. 33, 4:24-28, 5:1-3). Plaintiff notified Defendants in writing that they were in violation of the franchise agreements. (Doc. 33, 5:4-5).  According to the declaration, on about August 12, 2005, Plaintiff notified Defendants in writing that Defendants were in material breach of the franchise agreements, and that as a consequence, the agreements were terminated effective August 15, 2005. (Doc. 33, 5:9-14, 8:1-5).

     Ms. Iuliano's declaration also states that Plaintiff seeks damages for breach of Defendants' various monetary obligations under the franchise agreements, including royalty fees, advertising fees,

auditing charges, and convention charges, all of which are owed by Defendants to Plaintiff under the agreements.  According to the declaration, the sum of all of the obligations alleged to be owed under all of the franchise agreements is $2,206,087.48.  Plaintiff seeks a judgment against Defendants in the amount of $2,206.086.40 plus interest, attorney's fees, and costs. (Doc. 33, 6:10-28, 7, 8: 1-5).

### 2.   **Damages under the Franchise Agreements and the Promissory Note.**

Plaintiff seeks four categories of damages under the franchise agreements: (a) royalty and advertising fees, and auditing and convention charges; (b) liquidated damages; (c) prejudgment interest; and (d) attorney's fees and costs.

### (a)   **Royalty Fees, Advertising Fees, Auditing Charges, and Convention Charges.**

Under each franchise agreement, Defendant Brager, Inc. agrees to pay Plaintiff royalty fees equal to 6% of all gross revenues, with minimum monthly fees of $540, a minimum monthly advertising fees of $207, as well as its share of auditing and convention charges.  (Doc. 33, Exhs. A-E, ¶ 6, 7,10, 11, 17).   Ms. Iuliano's uncontradicted declaration states that as of August 15, 2005, the amount of $51,065.50 is owed under the franchise agreement for the Ceres location for royalty fees, advertising fees, audit charges and interest (collectively, "audit charges"), and convention charges; $57,245.33 is owed for the Turlock location; $110,972.51 is owed for the Modesto location; $33,505.84 is owed for the Oakdale location; and $51,520.65 is owed for the Merced location.  (Doc. 33, 6:7-10).  The sum of these amounts owed is $304,309.83.

### (b)   **Liquidated Damages.**

The franchise agreements also allow Plaintiff to recover liquidated damages or "lost future profits" if the franchise agreements are terminated early and for cause, which is what occurred in this case. (Doc. 33, Exhs. A-E, ¶ 17G .  The liquidated damages provision is intended to compensate Plaintiff for its lost future profits from the date of early termination to the date of contract expiration.

Liquidated damages provisions are enforceable when they are "reasonable under the totality of the circumstances" and conversely, are unenforceable as "penalties" designed to punish the defendants or deter breaches of contract when they are unreasonable.  Metlife Capital Financial Corp. v. Washington Ave. Associates L.P., 159 N.J. 484, 493-96, 732 A.2d 493, 4 (N.J. 1999).

Under New Jersey law, a liquidated damages provision in a commercial contract between sophisticated parties is "presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." <u>Metlife Capital Financial Corp. v. Washington Ave. Associates L.P.</u>, 159 N.J. at 499.

In this case, the franchise agreements provide that liquidated damages for early termination are calculated by multiplying the average monthly royalty fees, advertising fees, dues and other fees owed under the agreements for the period from the effective date of the contract through the date of early termination, by the number of months or partial months remaining in the term of the agreement, then discounted at the rate of 8% to obtain the present value of these damages. (Doc. 33, Exhs. A-E, ¶ 17G.). The franchise agreements are commerical contracts between two corporations  engaged in the real estate brokerage business, and the corresponding personal guaranties are between a corporation and the corporate Defendant's president. Based on the evidence submitted and considering the totality of the circumstances, the Court finds that the presumption of reasonableness applies in this case. Defendants have not appeared in this action, and have not challenged the negotiated stipulated damages provisions or otherwise rebutted the presumption of reasonableness. Accordingly, the Court finds that the liquidated damages provisions are enforceable.

Ms. Iuliano's uncontradicted Declaration reflects that as of August 15, 2005, the amount of $255,035.11was owed as liquidated damages for the Ceres location; the amount of $236,000.05 was owed for the Turlock location; the amount of $ 623,576.74 was owed for the Modesto location; the amount of $209,331.38 was owed for the Oakdale location; and the amount of $471,166.90 was owed for the Merced location. (Doc. 33, 5:15-28, 6:1-9).   The sum of these amounts is $ 1,795,110.18.

**(c)      Prejudgment Interest - Franchise Agreements.**

Each franchise agreement provides for interest on all late payments at the rate of 18% per annum or the highest rate for commercial contracts permitted under applicable law, whichever is less. (Doc. 33, Exhs A-E, ¶ 17I).  Defendants' obligation to pay interest survives Plaintiff's termination of the agreements. (Doc. 33, Exhs.A-E, ¶ 17G).

14

Under New Jersey law, awards of prejudgment interest in contract actions are discretionary and subject to equitable principles.  See, e.g., DialAmerica Marketing, Inc. v. KeySpan Energy Corp., 374 NJ. Super. 502, 508, 865 A.2d 728 (N.J. Super. A.D., 2005).  "The purpose of prejudgment interest is to is compensatory, to indemnify claimants for the loss of what they would have earned on the amount ultimately awarded to them if they had received those amounts when due."  Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474, 506. 323 A.2d 495 (1974).  A court may award prejudgment interest based on the parties' contract when, as in this case, the parties have specifically agreed to a contract rate of interest.  See, Capital One Bank v. Monge, 380 N.J. Super. 266, 270,  881 A. 2d 814 (N.J. Super. L. 2005); N.J. S.A. 4:43-2(a); N.J.S.A. 6:6-3(a); N.J. S.A. 31:1-1.

In this case, Plaintiff seeks prejudgment interest at the rate of 18% per annum, and the Court has found no New Jersey authority suggesting that an 18 % interest rate is usurious or otherwise improper in this context.  Ms.  Iuliano's uncontradicted Declaration reflects that as of August 15, 2005, the prejudgment interest on the royalty fees, advertising fees, audit charges and convention charges due under the franchise agreements will accrue at the rate of $202.67 per day, from August 15, 2005 until paid . . . ." (Doc. 33, 5:15-28, 6:1-28. 7:1-10, 8:1-3).  Accordingly, the Court finds that an award of prejudgment interest in the amount requested is warranted.

**(d)** **Principal Balance - Promissory Note.**

Plaintiff also seeks damages for principal and interest for breach of the promissory note. In the promissory note, Defendants agreed to repay with interest the principal sum of $160,000.00 borrowed from Plaintiff.  (Doc. 33, Exh. K, p.1). Ms. Iuliano's uncontradicted declaration reflects that as of August 15, 2007, the outstanding principal balance of the promissory note was $106,667.47. (Doc. 33, 5:17-22, 6:15-22).  The Court finds that Plaintiff's damages against Defendants include loan principal under the promissory note in the amount of $106,667.47.

**(e)** **Interest - Promissory Note.**

The promissory note provides that Plaintiff is entitled to interest when Defendant fails to make a payment.  The last sentence of the second paragraph of the promissory note states: "In the

event Maker or Co-Maker(s) fail to make any payment when due, including any payment due upon acceleration of this Note, the entire outstanding Principal shall thereafter bear simple interest at a rate equal to the lesser of eighteen percent (18% ) per annum or the highest rate allowed by law from its due date until paid in full." (Doc. 33, Exh. K, p.1).

Default interest rate provisions and liquidated damages provisions are subject to the same analysis.  See, Century 21 Real Estate, LLC. V. Heritage Real Estate, Inc., 2007 WL 2023552 *7 (N.D. Cal. July 6, 2007), citing Stuchin v. Kasirer, 237 N.J. Super. 604, 569 A. 2d 907 (N.J. Super. App. Div. 1990).  Similar to the defendants in Century 21,  Defendants have failed to challenge the 18% per annum default rate of interest as unreasonable, and thus they have failed to rebut the presumption of reasonableness.   (Id.).  Accordingly, the Court finds that the 18% per annum interest rate in the promissory note is reasonable and enforceable.

Ms. Iuliano's uncontradicted declaration states that $43,948.80 is owed as interest on the promissory note as of April 24, 2007, and requests "interest on the remaining principal balance due on the Note of $106,667.47, at the rate of 18% per annum, $52.60 per day, as provided by the terms of the Note until paid." (Doc. 33, 4:22-23, 8:3-5).  The Court finds that Plaintiff's damages against Defendants include damages for $43,948.80 in interest as of April 24, 2007, and thereafter at the rate of $52.60 per day from April 25, 2007, through the date the Court enters judgment.

(f)     **Attorney's Fees and Costs.**

Plaintiff also seeks an award of its attorney's fees and costs in the sum of  $17,034.43. (Doc. 32, 3:4-6; Doc. 33, 7:12-28, 8:1).  The franchise agreements contain attorney's fees provisions that require Defendants (a) to pay Plaintiff's costs and expenses, including reasonable attorney's fees incurred to collect any fees or amounts due under the  agreements; and (b) to pay Plaintiff's reasonable attorney's fees, costs of investigation, court costs, and other litigation expenses in the event Plaintiff is the prevailing party in litigation.  (Doc. 33, Exhs. A-E, ¶ 9H,17 H, 24L). The guaranties include the performance of all of Defendant Brager. Inc.;s obligations under franchise agreements, including its obligation to pay attorney's fees and costs.  (Doc. 33, Exhs. F-J).  The promissory note also contains an attorney's fees provision allowing the prevailing party to recover

16

"reasonable attorney's  fees (including in-house attorneys) and court costs and all costs of collection in addition to any other relief to which that party may be entitled." (Doc. 33, Exh. K).

According to Ms. Iuliano's uncontradicted declaration, its primary handling attorney's rate is $265 per hour, and as of the filing of the Application, the attorney's fees incurred are $15,507 and the costs are $1,527.  (Doc. 33, 7: 23-26).  Plaintiff seeks an award of attorney's fees and costs in the amount of $17,034.43. (Id. at 7:27-28, 8:1-2). The Court finds that the amount of attorney's fees and costs requested is reasonable, given that this action involves the enforcement of five franchise agreements, five guaranties, and a promissory note.  Accordingly, the Court will recommend granting Plaintiff's request for attorney's fees and costs.

## **RECOMMENDATIONS**

For the reasons discussed above, the Court RECOMMENDS that judgment be entered in favor of Plaintiff ERA Franchise Systems, Inc. and against Defendants Brager & Associates, Inc. and Alisha Brager, as follows:

1.    For obligations due pursuant to the franchise agreements as of August 15, 2005 and including the remaining principal balance of the promissory note, in the total sum of $2,206,087.48;

2.    For interest at the rate of 18% per annum on the sum of $410,976.30, in the amount of  of  $202.67 per day from August 16, 2005 through the date of judgment;

3.    For interest on the remaining principal balance of the promissory note as of April 24, 2007, in the amount of $43,948.80;

4.    For interest on the remaining principal balance of the promissory note in the amount of $52.60 per day from April 25, 2007 through the date of the judgment; and

5.    For attorney's fees and costs in the amount of $17,034.43.

These Findings and Recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  Within fifteen (15) days after service of these Findings and Recommendations on the parties, any party may file written objections to these Findings and Recommendations with the Court and serve a copy on all parties and the Magistrate Judge in compliance with Local Rule 72-304(b).

Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Responses to objections shall be served and filed within ten (10) court days after service of the objections in compliance with Local Rule 72-304(d).  A copy of the responses must be served on the Magistrate Judge.  The District Court will then review the Magistrate Judge's ruling, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **August 1, 2007**                                                      **/s/ Theresa A. Goldner**
———                                                      UNITED STATES MAGISTRATE JUDGE